IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PETER H.,[1]                                3:21cv-00876-BR

        Plaintiff,                       OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

**KEVIN KERR**
Kerr Robichaux & Carroll
PO Box 14490
Portland, OR 97293
(503) 255-9092

        Attorneys for Plaintiff

**SCOTT ASPHAUG**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 - OPINION AND ORDER

**WILLY LE**
Acting Regional Chief Counsel
**FRANCO L. BECIA**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2114

       Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Peter H. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## ADMINISTRATIVE HISTORY

      Plaintiff filed an application for DIB on March 28, 2019, alleging a disability onset date of July 1, 2017.  Tr. 272-73.[1] The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on October 22,

---

[1] Citations to the official transcript of record filed by the Commissioner on November 14, 2021, are referred to as "Tr."

2020.  Tr. 134-74.  Plaintiff was represented at the hearing. Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on December 9, 2020, in which she found Plaintiff is not entitled to benefits.  Tr. 111-33. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on April 5, 2021, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on August 8, 1974, and was 46 years old at the time of the hearing.  Tr. 272.  Plaintiff has a masters degree in Finance.  Tr. 410.  Plaintiff has past relevant work experience as an administrative services officer, operations and intelligence assistant, and infantry unit leader.  Tr. 127. Plaintiff alleges disability due to post-traumatic stress disorder (PTSD); depressive disorder; dissociative disorder; "back issues"; tendinitis in his shoulders, knees, and elbows; "ankle issues"; and "numbness in legs."  Tr. 190.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

5 - OPINION AND ORDER

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work the claimant has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after his July 1, 2017, alleged onset date.  Tr. 116.

At Step Two the ALJ found Plaintiff has the severe impairments of "spondylosis with radiculopathy status post lumbar

laminectomy," mild left knee degenerative joint disease, PTSD, and major depressive disorder.  Tr. 116.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 117.  The ALJ found Plaintiff has the RFC to perform medium work except Plaintiff

> can frequently climb ladders, ropes, and
> scaffolds; can frequently stoop, kneel, crouch,
> and crawl; has sufficient concentration,
> persistence, and pace to complete simple, routine
> tasks and some detailed and complex tasks up to a
> specific vocational preparation (SVP) level of 4
> for a normal workday and workweek with normal
> breaks; should have only occasional brief
> superficial contact with the general public;
> should not work as part of a team; and can accept
> supervision delivered in a calm and evenhanded
> manner.

Tr. 118-19.

At Step Four the ALJ found Plaintiff cannot perform his past relevant work.  Tr. 127.

At Step Five the ALJ found Plaintiff can perform other work that exists in significant numbers in the national economy. Tr. 127.  Accordingly, the ALJ concluded Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony and (2) partially rejected the

8 - OPINION AND ORDER

opinions of examining and reviewing psychologists.

## I.    **Plaintiff's Testimony**

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."  *Garrison*, 759 F.3d at 1014-15.  *See also*

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)
(same).  General assertions that the claimant's testimony is not
credible are insufficient.  *Parra v. Astrue*, 481 F.3d 742, 750
(9th Cir. 2007).  The ALJ must identify "what testimony is not
credible and what evidence undermines the claimant's complaints."
*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing that the "biggest
barrier[s]" to his ability to work are his "inability to socially
interact, . . . to stay focused on tasks, to integrate, to get
along with people, . . . not [to] get angry, [and to] act
appropriately."  Tr. 151.  Plaintiff stated he has "a different
mindset than most people do . . . I see things that are very
conspiratorial level [*sic*], and I start diving into things, and
people don't like that," which has caused him to have problems
"getting through . . . even an interview process" and working in
teams  Tr. 152.  Plaintiff testified when he was taking courses
for his masters degree he got "combative with people" including
instructors, supervisors, and other students as a result of his
PTSD.  Tr. 160.  Plaintiff noted he "feel[s] like people are
trying to get [him].  [He] feel[s] like . . . [he's] dealing with
people that are working . . . to destroy" him.  Tr. 161.

Plaintiff testified he takes walks "periodically . . . maybe
. . . one to two times a week" for "a mile or two . . . just
around the neighborhood" either "very early in the morning" or at

night." Tr. 155.  Plaintiff goes to church once a month.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 120.  The ALJ noted the record "documents a history of mental health impairments" including PTSD and an anxiety disorder.  Nevertheless, the ALJ pointed out that Plaintiff's mental-status examinations "repeatedly noted [Plaintiff was] alert, fully oriented, cooperative, pleasant, and with intact cognition including concentration and attention." Tr. 124.  These mental-status examinations, however, appear to be undermined by observations of various mental-health professionals that indicate Plaintiff's PTSD symptoms interfere with his activities of daily living despite relatively normal mental-status examination results.  For example, a December 11, 2017, psychological assessment notes Plaintiff believes "he is being surveilled and that friends of his . . . are also surveilled"; that "crises and other issues throughout the world tend to be staged for motives meant to benefit people in power (*e.g.* 'world government people' and 'bankers')"; that "9/11 and the Ebola crises . . . were fabricated by the U.S. government"; and that "the public is manipulated into experiencing things in specific

ways while utilizing 'satanic rituals' and 'numbers codes.'"
Tr. 11.  Plaintiff also advised the examiner that during his time
in the Army his second wife had reported him to the Army for
"attempted homicide, stalking, and assault."  Tr. 12.  The
examiner observed that although Plaintiff "presented as
intelligent and his speech and language were within normal
limits," his

> thought process was circumstantial when he
> discussed certain topics (particularly his time in
> the military and his mistrust of governing bodies
> and others in power).  He appeared to be
> mistrustful and highly suspicious, and at times
> appeared to be . . . preoccupied [with] ideas
> around persecution.

Tr. 16.  The examiner concluded Plaintiff's profile is

> indicative of someone who may be experiencing
> serious psychopathology.  He may experience
> paranoid ideation, unusual experiences,
> disorganization, confusion, a sense of
> disintegration, and/or a constant state of
> alertness to being attacked, judged and/or
> criticized. He may be highly suspicious and
> distrustful as well as moody, unpredictable,
> negativistic, and hostile.

Tr. 18.  In addition, Plaintiff's scores on the Test of Memory
Malingering (TOMM) "does not support the idea that his reported
symptoms on symptom based tests (*e.g.*, the MMPI-2, the CAPS, the
PCLS) are false or exaggerated.  Rather, his consistent report
across assessments, his performance on his tests of psychological
functioning, and the validity scales on the MMPI-2 indicate that
[Plaintiff's] report is a valid and therefore, an accurate

representation of his symptoms and psychological distress."
Tr. 20.

Similarly, examining psychologist Nikole Roberts, Ph.D.,
noted on May 18, 2020, that Plaintiff was "alert and oriented x6
to person, date, month, year, day of the week, and reason for
interview . . . [;] adequately-groomed and appropriately dressed.
. . .[;] displayed expected eye contact . . . [;] demonstrated
appropriate receptive and expressive language"; and did not
exhibit any psychomotor agitation." Tr. 84. Nevertheless,
Dr. Roberts noted Plaintiff "experiences extreme paranoia
. . .[,] is frustrated with the VA system because he believes
that the VA is out to get him by putting him on medication
designed to kill him[,] . . . trusts no one[, and] believes that
he is under surveillance." Tr. 83.

On May 23, 2019, Plaintiff reported to treating psychiatrist
David Mansoor, M.D., that he believed he was "being followed and
contacted by international spies." Tr. 488. Plaintiff presented
Dr. Mansoor with "a list of over 100 names and words that
represented different examples of experiences that . . . led
[Plaintiff] to feel paranoid. His attempts to explain some of
these were not entirely clear and some a bit far-fetched."
Tr. 489. Dr. Mansoor noted Plaintiff's "symptoms are consistent
with delusional disorder with referential beliefs." *Id*.

On May 15, 2019, Dr. Mansoor noted Plaintiff was "dressed in

13 - OPINION AND ORDER

casual clothes with good grooming[,] . . . [was] pleasant and
cooperative, but visibly anxious[,] . . . [and had a] linear and
organized" thought process.  Tr.  491.  Nevertheless, Plaintiff
reported to Dr. Mansoor that

> 3 years ago he wrote several papers criticizing
> the US government based on his experiences in the
> military.  This has led to multiple attempts by
> "international" people (*e.g.*, spies) to make
> connections with him.  An example he offers is
> studying in the U. of P. library late at night,
> and being approached by a janitor who claimed to
> be the head of the Portland United Nations,
> inviting him to join their secret society.

Tr. 491.

On February 5, 2018, treating mental-health provider Lindsey
Leiman, Q.M.H.P., noted Plaintiff was "alert, engaged,
cooperative, and oriented x4 throughout the session."  Tr. 601.
Although Plaintiff's "thought process was largely coherent,"
Leiman noted Plaintiff "continues to make unusual claims *i.e.*
that the stock market's 666 point drop is indicative of volition
on the part of the government" and that he is "concern[ed] that
his teacher will attempt to recruit him into a Jesuit affiliated
secret society . . . if he isn't careful about what he shares,
and that he won't be able to refuse without being targeted in
some way."  Tr. 601.

On December 20, 2017, Plaintiff presented to Dr. Mansoor
"[d]ressed casually with good grooming.  Cooperative and
conversant.  No speech . . . abnormalities.  Affect restricted in

range but generally euthymic.  [Thought process] linear and
organized." Tr. 513.  Plaintiff, however, also informed
Dr. Mansoor that Plaintiff is

> related to Abraham Lincoln and [has been]
> monitored throughout his life (with intermittent
> contact) by members of various secret societies.
> Their intent has been to recruit him to be a part
> of their society (Masons, Shriners, Illuminati,
> etc).  He went on to describe the inter-
> relatedness of all U.S. presidents and various
> well known individual[s] (*e.g.*, Tom Hanks).

Tr. 513.  The record, therefore, indicates the fact that
Plaintiff regularly appeared to be fully oriented, cooperative,
and pleasant does not contradict Plaintiff's testimony that his
paranoia and feelings that "they are out to get him" undermine
his ability to work.  In addition, the record does not contain
any report by any mental-health professional that Plaintiff's
PTSD or other conditions improved or that he was not suffering
significant symptoms as a result of a mental impairment.

The ALJ also noted Plaintiff did not comply with recommended
medication.  Plaintiff, however, testified he discontinued
prescribed medication because it increased his suicidal ideation.
Tr. 119.

The Court concludes on this record that the ALJ erred when
she partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of his mental-health
impairments because the ALJ did not provide clear and convincing
reasons supported by substantial evidence in the record for

15 - OPINION AND ORDER

doing so.

### III. Opinions of Drs. Valette and Finnerty

Plaintiff alleges the ALJ erred when she partially rejected the opinions of examining psychologist Brett Valette, Ph.D., and reviewing psychologist Todd Finnerty, Ph.D.

"Because plaintiff filed [his] application[] after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence." *Christopher W. v. Comm'r*, No. 6:20-CV-01632-JR, 2021 WL 4635801, at *6 (D. Or. Oct. 7, 2021). "Under the [new] regulations, an ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by . . . agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence." 20 C.F.R. § 404.1513(a)(5). In addition, the new regulations rescinded SSR 06-03p in which the SSA "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources . . . . The [new] rules revised [this] polic[y]. . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just

acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P 2017 WL 3928298, at *1 (S.S.A. Mar. 27, 2017).

"The ALJ must articulate and explain the persuasiveness of a [medical] opinion or prior finding based on 'supportability' and 'consistency,' the two most important factors in the evaluation. *Christopher W.*, 2021 WL 4635801, at *6 (quoting 20 C.F.R. §§ 404.1520c(a), (b)(1)-(2)). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Id.* (quoting 20 C.F.R. § 404.1520c(c)(1)-(2)).

> The ALJ may, however, is not required, to explain how other factors were considered including the relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements.

*Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(5)). *But see* 20 C.F.R. § 404.1520c(b)(3)(when an ALJ finds two or more opinions about the same issue are equally supported and consistent with the record but not exactly the same, the ALJ must articulate how these "other factors" were considered).

### A.   Dr. Valette

On August 8, 2020, Dr. Valette completed a
psychological report after conducting a psychological evaluation
of Plaintiff.  Dr. Valette examined Plaintiff and reviewed
Plaintiff's medical records including results of Plaintiff's
previous psychological examinations.  Plaintiff reported he does
not go to the grocery store or to places with crowds because they
cause him to suffer flashbacks and anxiety.  Tr. 1192.  Plaintiff
does not go to movie theaters "due to his paranoia."  Tr. 1193.
Plaintiff stated he is unable to cook simple meals, occasionally
neglects basic hygiene, does not watch movies or television, and
does not spend time on his mobile telephone due to dissociative
episodes, depression, and difficulty focusing.  *Id.*  Plaintiff
informed Dr. Valette that he had been arrested for "assaulting a
female and stalking [and for] assault altercations."  Tr. 1194.
Dr. Valette noted the record reflects Plaintiff has "severe
symptoms of PTSD"; "dissociation, NOS psychosis,
depersonalization[,] and derealiziation," and depressive
symptoms.  Tr. 1198.  Dr. Valette diagnosed Plaintiff with severe
PTSD and major depressive disorder, "recurrent, severe, with
anxious distress."  *Id.* Dr. Valette opined Plaintiff could not do
the following "on a sustained basis over days and weeks of work":
understand, remember and carry out "an extensive variety of
complex instructions"; understand, remember and carry out simple

one or two step instructions; interact appropriately with supervisors, coworkers, or the public; or maintain concentration and attention sufficient to carry out complex or simple one or two step instructions.  Tr. 1199.

The ALJ found Dr. Valette's opinion to be unpersuasive on the grounds that Dr. Valette did not perform a mental-status examination, based his opinion "in large part" on Plaintiff's subjective reports, and assessed limitations that are "inconsistent with the overall record."  Tr. 125.  Specifically, the ALJ noted Plaintiff's "generally unremarkable mental status examination findings" and Plaintiff's attendance at school and church as evidence that Dr. Valette's opinion was unpersuasive. As noted, however, the record reflects Plaintiff's generally unremarkable mental-status examination findings do not undermine the severity of Plaintiff's mental-health issues.  In addition, Dr. Valette performed a mental-health evaluation of Plaintiff as well as a complete records review.  Dr. Valette's failure to conduct a mental-status examination to evaluate Plaintiff's functioning on the specific date of the assessment does not undermine Dr. Valette's conclusions as to the severity of Plaintiff's mental-health issues throughout the relevant period. Finally, Dr. Valette's opinion is not contradicted by any treating or examining mental-health professional.

On this record the Court concludes the ALJ erred when

she partially rejected Dr. Valette's opinion because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.

**B.   Dr. Finnerty**

On July 13, 2020, Dr. Finnerty completed a review of Plaintiff's medical records in reference to Plaintiff's request for a "Medical Retirement Upgrade for Army Corrective Board and SSDI." Tr. 1247. Dr. Finnerty noted the record reflects Plaintiff

> experienced significant PTSD symptoms while still in the military. He was evaluated by the VA and found to have significant occupational impairment due to substantial PTSD symptoms. He experienced significant interpersonal problems in his career and in his personal life. While still in the military he was unfit to continue service due to his significant PTSD symptoms. Before his discharge from the military he was not fit-for-duty due to his mental health concerns including PTSD.

Tr. 1248. Dr. Finnerty opined Plaintiff "experiences total occupational and social impairment due to PTSD" and recommended "strong consideration be given for a medical retirement upgrade." *Id*. Dr. Finnerty stated "the medical evidence supports that [Plaintiff] meets [social security] listing 12.15AB." *Id*. Specifically, there is "medical documentation" of the following:

> Exposure to actual or threatened death, serious injury, or violence; Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks); Avoidance of external reminders of the event; Disturbance in mood and behavior; and

> Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance). He has marked limitations in concentration, persistence and pace and adapting and managing oneself. His PTSD creates significant stress tolerance limitations which negative[ly] impacts persistence and pace and adapting to changes. He lacks sufficient stress tolerance to sustain tasks and lacks the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He lacks the ability to respond appropriately to changes in (a routine) work setting.

Tr. 1248.

The ALJ found Dr. Finnerty's opinion to be unpersuasive on the grounds that Dr. Finnerty did not examine Plaintiff; the opinion is "conclusory, vague, and without sufficient support"; and the opinion is inconsistent with Plaintiff's mental-status examinations in the record. Tr. 126. As noted, however, the record reflects Plaintiff's generally unremarkable mental-status examination findings do not undermine the severity of Plaintiff's mental-health issues. In addition, Dr. Finnerty conducted a complete review of Plaintiff's medical record and he has "significant training related to PTSD." Tr. 1248.

On this record the Court concludes the ALJ erred when she partially rejected Dr. Finnerty's opinion because the ALJ did not provided substantial and legitimate reasons for doing so based on substantial evidence in the record.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be

> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

Here further administrative proceedings are necessary for the ALJ to evaluate Plaintiff's testimony and the opinions of Drs. Valette and Finnerty and to determine whether Plaintiff is disabled.  Accordingly, the Court remands this matter to the Commissioner for further administrative proceedings.

## <u>CONCLUSION</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 28 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

DATED this 14th  day of June, 2022.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge

23 - OPINION AND ORDER